turn to the first case on our calendar, which is Degraff v. Commissioner of Social Security Council. Good morning. You may proceed. May it please the court. So this case involves multiple legal issues that I believe independently require remand. All of the issues are very fact specific. I believe the facts here show there was an abuse of discretion, an adversarial proceeding, a punitive nature of the rejection of evidence, and lack of good reasons for discounting virtually all medical opinions. The ALJ's actions were contrary to Supreme Court and Second Circuit precedent in the regulations. And as a result, Degraff was deprived of full and fair hearing on all of the evidence. I would argue that the entirety of Social Security's argument is blaming the hearing representative while failing to acknowledge the law, showing the ALJ as legal burdens that were not met. First, I believe Degraff met his burden. I don't want this issue to be buried based upon evidentiary issues, but 15 opinions and letters support disability. All the opinions and treatment notes from Hillside were submitted by the hearing representative. Fifty-three of those pages indicated opinions, while only 26 pages reflected treatment notes. The ALJ... It's true counsel, isn't it, that you didn't get them in five days before the hearing? All the opinions that I referenced now were in the record, and there were 26 pages of those notes. The records, Social Security argues Degraff's hearing representative should have been aware of those records, and I would argue that he should have been aware as well. All the records were submitted, reflected 14 instances where they reflected weekly treatment, and all those records were submitted five days prior to the hearing. Counsel, you claim that you asked for the records three months in advance of the hearing, and then didn't notice that they never came in. That's not exactly what we call due diligence. Right, well, I wasn't the hearing representative, and it's very easy to look at the record now and see those errors. The ALJ also has a duty to look at the records. Part of the five-day rule is there is the inform or submit requirement. There's also the issues of fairness, whether the records should have been considered, should have been received priorhand, and whether the judge had sufficient evidence to make an informed decision. I would argue that there wasn't sufficient evidence. The ALJ should have known about the records. The ALJ had an independent duty to request the records, and also one of the main concerns of the five-day rule is to have efficiency of the evidence to prevent delays, and since the records were submitted nearly three days after the hearing, there was no delay in the proceedings. So, there's really no reason to reject this evidence other than to be punitive here. So, would you address what I understood the ALJ's finding to be that even if those late submitted records had been considered, it would not have changed the ALJ's judgment? Would you address that question, please? Right, so none of the records were addressed by the ALJ. The ALJ did not weigh those. He said that even if he had, it would not have changed his mind. So, that effectively constitutes some sort of an assessment, right? So, why don't you deal with the question of whether they should have or would necessarily have made a difference under the standard of review for us? Right, so you have to look at the actual content of the records. So, the records that were in the file contained only one mental status examination within those 26 pages. The records that were submitted first corroborated the medical opinion showing that there was treatment, that these people were informed of claimant's symptoms and his response to treatment. It contained multiple medical status examinations containing additional objective findings that are supportive of both of the opinions but also of claimant's allegations. So, there's abnormal findings for mood and effect regarding thought process and orientation, regarding behavior and functioning. And all of those were not addressed by the ALJ at all. So, I did indicate in my brief, I mean, summarizing that evidence, I do believe that that's the most robust evidence that we have in the file that is from the relevant time frame, but there's all these mental status examinations. And the main reason why the ALJ rejected the therapist's opinions was the lack of corroborating evidence within their treatment notes. So, it's really a game that the ALJ is playing here is, I'm not accepting the records, but I'm relying upon the absence of the records to say these opinions are not supported. So, they did accept the letter that came with the records. So, it looks to me that's pretty selective. It's very selective and that letter arguably is duplicative of the multiple letters that were already in the file. So, this new evidence contains essentially weekly treatment for the time frame that was requested by the ALJ and the prior records contain only one mental status examination back in 2014. So, there's four years of evidence that is essentially missing more than five days prior to the hearing. Despite that, the hearing representative submitted 15 opinions supporting stability and the ALJ saying that I'm not going to accept the conclusions of these treating therapists because we don't have the records. So, if we were to take the view that the ALJ effectively issued an alternative holding saying that even if I were to have considered these records, it would not have changed my view, what would our standard of review be over that decision? I'm sorry, there was noise. I didn't hear your last word. What would the standard of review be for us over the ALJ's decision? And my understanding is that it would be for substantial evidence, but I'd like your view on that. Right. It is substantial evidence, but you also have to compare all medical opinions to the objective findings in the record. So, that comparison under the treating physician rule, one of the opinions that were submitted was the opinion of the treating physician, Dr. Velasquez. His opinion was not compared to any of these objective findings. So, under the treating physician rule, he's entitled to deference based upon his treating relationship, and you have to compare his findings to the record as a whole. So, by failing to address any of these findings, this analysis was never made that looking at the therapist opinions as well, that analysis was never made. This case was filed when the Burgess factors were still in place. Court recently remanded just a week ago in Gentiles that Burgess factors are still good law, that there has to be comparison to the regulatory factors for all opinions. And as in this case, as I pointed out, the LJ didn't rely upon the medical opinions, relied upon his own lay opinion, and rejected all evidence that we did have in the file that was accepted. Counsel, thank you. Your time has expired. You've reserved two minutes for rebuttal. We'll hear from the government. Good morning. Can you hear me okay? Yes. Okay. Good morning, Your Honors. May it please the court. My name is Vernon Norwood, and I represent the appellee, the Commissioner of Social Security. The Commissioner's final decision cites substantial evidence of record to support each of his determinations and correctly applies all the relevant regulations. The ALJ in this case properly applied the Commissioner's regulations when he developed the evidence of record, evaluated that evidence, which included opinions from two consultative psychologists, a state agency psychological consultant, and Mr. DeGraff's own medical sources. The ALJ then properly determined that that evidence was sufficient to make an informed disability decision. The ALJ then crafted a decision that was both comprehensive and concise, and as such, permits for meaningful judicial review. For these reasons, the Commissioner's decision should be affirmed. Contrary to Mr. DeGraff's contention, the ALJ complied with its obligations to develop the evidence of record. The agency is obligated to assist claimants in obtaining evidence from their medical sources by making reasonable efforts. The ALJ is required to make a complete record, isn't that true? Yes, a complete record. Isn't that the obligation of the ALJ? So how can you defend his decision not to look at the missing records? It's his obligation to make sure the record is complete. Well, his obligation to make sure the record is complete entails making an initial request for the evidence, and if the evidence is not received, then a follow-up request for the evidence. What happened in this case was that they made the initial request, they made the follow-up request, then they received evidence from Hillside, which is now exhibited in the administrative record at 2F. That evidence went through at the time of the request. Thereafter, the agency received further evidence from Hillside, updated through January 2018, and that evidence is exhibited in the administrative record at Exhibits 7F and Exhibits 11F through 14F. But he didn't look at them, did he? He didn't look at the seven. The ALJ reviewed the evidence. What he did was he didn't exhibit the evidence, and we know this because in the decision, the ALJ states the evidence would not have changed his decision. Thereafter, three times during the course of the decision, he cites those records and describes them as they were. They were just Mr. DeGraff complaining to his therapist about his difficulties getting along with his significant others and his mother. So, counsel, can you explain why did the judge bother excluding it if the ALJ also then made what sounds like an alternative finding that they wouldn't have changed his decision anyway? I guess I'm not quite sure why you would bother making alternative findings, why you wouldn't just accept them and make your finding. I guess it seems sort of odd to me. Well, what it is, it's claimants have an obligation to submit evidence five days prior to the hearing. And what happened in this case was Mr. DeGraff's representative, Mr. Redmond, didn't do so. But he did eventually supply the records, and the ALJ considered those records. But what the ALJ did was he admitted them to the record, but he didn't exhibit them. And then in the decision, he referenced the records three times. So what we have here is an ALJ who's complying with the five-day rule by not exhibiting the records, but he did admit the records into the record, and he did consider the records in his decision. Well, wasn't the representative obligated, if only by the ALJ's direction, to submit a motion with the records explaining why he hadn't turned them over before and then failed to supply the motion? Yes, that's absolutely correct, Your Honor. What happened at the hearing was, for the first time, Mr. DeGraff's representative, Mr. Redmond, realized that he did not have those treatment records. ALJ then pointed out that those records were untimely. And although the ALJ had no obligation whatsoever to do so, he afforded Mr. Redmond the opportunity to provide a reasonable excuse for failing to submit that evidence by submitting a late submission notice, a late submission motion. The ALJ then explicitly told Mr. Redmond that he would review that evidence in line with the late submission motion and consider the motion. Thereafter, a few days later, Mr. Redmond submitted the treatment records with no motion. So the ALJ properly exercised his discretion. He refused to exhibit the treatment records from Hillside. So isn't the logical explanation for what might be called the alternative holdings simply that the judge rejected the records because there had been no compliance with the requirement of a motion explaining the failure to submit them earlier, but in the alternative, against the possibility that a reviewing agency or court took a different view of the first ruling, said it wouldn't have mattered anyway. I've considered them and it wouldn't have changed anything. Isn't that what happened? Yes, that's correct. What the ALJ did was he admitted the records into the evidence. He considered them, but he did not exhibit them. So what we're talking about here is the difference between admitting the records into the evidence versus admitting the records and exhibiting them. The records were part of the administrative record. The ALJ reviewed those records, discussed his findings regarding those records. And even more so, Mr. Redmond requested that the appeals council review the ALJ's decision. Mr. Redmond contended that those therapy records would somehow undermine the ALJ's decision. The appeals council reviewed the evidence and determined that those records would not have changed the ALJ's decision. So what we have here is the therapy notes are part of the record, but they weren't exhibited. They were reviewed by the ALJ and they were reviewed by the appeals council. And just as importantly, Mr. DeGraff has made no showing whatsoever that those records show that he would not be able to perform unskilled work with limitations. I just, counsel, I disagree with you. Amy Loblaw, who was the mental health therapist, said that DeGraff was unable to function 25% or more of the time in independently performing simple or complex tasks and in maintaining concentration. That is from 577 of the record. How could you then claim that they looked at these records and found that he was available for work? Well, the ALJ did consider those records and he did consider the opinions. Well, what I'm asking you is how could he have considered the records when the records are different and much different than his conclusion? Well, he considered them and he afforded only some weight to those opinions because those opinions were from non-acceptable medical sources. They were unsupported by the source's medical records and they were inconsistent with substantial evidence of record. Ms. Loblaw and Ms. Greisch are not acceptable medical sources and their opinions are never entitled to controlling weight. All right, let me ask you this. You say substantial evidence supports the ALJ opinion. Dr. Chapman said he did not have enough evidence to make a conclusion. Dr. Lynn said DeGraff could only work 10 hours weekly and the ALJ disagreed with only that portion of her opinion and not with the rest of it. That seems to me very selective cherry picking of the evidence that was in front of him. And also, I want to point out that each party has the obligation to submit the evidence, not just the plaintiffs. Well, each party does have the obligation and the ALJ did obtain the evidence. He obtained evidence through January 2018 and he made them part of the record. As far as the opinions of Ms. Loblaw, those opinions were not consistent with other substantial evidence of record. They weren't supported by her treatment records and she is not an acceptable medical source. The acceptable medical sources in this case, the state agency psychological consultant, Dr. Chapman. Dr. Chapman said he did not have enough evidence to make a conclusion. How can you rely on that? That's relying on a very thin lead. Dr. Chapman reviewed the evidence that he had at the time and he determined that Mr. DeGraff did not have any significant limitations. So that part is consistent with what the ALJ found to not give more than some weight to Ms. Loblaw's opinion. Moreover, the consultative psychologist, Dr. Ramson, who evaluated Mr. DeGraff personally did not find any significant limitations. So what we have here is a non-acceptable medical sources making opinions that are not supported by their treating records. They're inconsistent with the opinions of acceptable medical sources and are basically from people who are not entitled to controlling weight anyway. So the ALJ properly afforded only some weight to those opinions. The test here is whether there's substantial evidence to support the ALJ, right? That is correct, your honor. So it's entirely possible that there's evidence cutting both ways and the ALJ has to make a decision. Is that essentially what your position is? Yes, exactly, your honor. Thank you, counsel. I'm sorry, did you want to say something? Just a few seconds. I'll just wrap it up. In some, Mr. DeGraff's challenges are without merit for the simple reasons that under the view, it is not enough for him to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Instead, he must show that no reasonable fact finder could have reached the ALJ's conclusions on this record and he has failed to do so. Here, the ALJ properly developed the evidence. He cited to substantial evidence that supports each of his determinations. And importantly, Mr. DeGraff did not carry his burden of showing that he was more limited than the ALJ's RFC determination. That's because the ALJ properly developed the evidence of record and substantial evidence supports each of his determinations. The commissioner respectfully requests that this court confirm his final decision. Thank you. Thank you, counsel. Mr. Goldstein, you have two minutes for rebuttal. All right, thank you. It went to what? Sorry. So, just a few things to address. The ALJ did not request any of the evidence. It was plaintiff's hearing representative who submitted all evidence include 15 opinions and letters. So, for the commissioner to say now that the ALJ developed the record at all is just not a factual finding. Also, there's no legal requirement for the hearing representative to file a brief with the submitted evidence. I know the ALJ would have preferred that. There's no legal requirement for that under Part B of the regulations. And just notably, Part A, as Judge Pooler pointed out, is each party is required to make every effort to ensure that the ALJ receives all evidence and must inform us about or submit any written evidence. So, for commissioner now to say that hearing counsel was known about this evidence, but the ALJ somehow did not know about this lacks credibility. And Part A was met by the submission of 14 instances identified in DeGrasse's main brief where the ALJ knew about the records or should have known about the records. And this brief requirement provided by the ALJ is irrelevant and only applies if the ALJ can claim that he did not know about this, the plaintiff did not inform the ALJ of the evidence. Also, the ALJ, there's this argument by commissioner that the records were considered, accepted, but not exhibited. There's no law that allows the record to be in the record, but not formally admitted into the record. The ALJ and the appeals counsel, if you look closely at both decisions, neither source actually evaluated or considered the evidence, noted what was within the evidence, note that frequency of treatment, note the objective findings within the treatment notes. So, there's absolutely no evaluation of this evidence and it's been evaluated the first time here. And just to point out a couple of points that Judge Pooler made, that the evidence relied upon by the ALJ does not support the findings such as the reviewing position, Chapman, Dr. Lynn's opinions, there are additional limitations. I do believe that multiple cases, CESA, GO, requiring an ALJ to officially state the reasons why additional limitations were rejected. The ALJ afforded this opinion the greatest amount of weight, but Dr. Lynn also indicated 50% inability to maintain attention and concentration in addition to that. And if I can interrupt, Dr. Chapman, on whom the ALJ relies, himself noted in his opinion that the evidence as a whole, both medical and non-medical, was not sufficient to support a decision on the claim. That is, he made no recommendation. And that's the medical person that the commissioner relies on. Right, and they argue substantial evidence goes both ways potentially, but that part, Dr. Chapman's opinion does not constitute substantial evidence. It doesn't identify abilities and limitations reflected in the IRFC finding. And if we do look at the record as a whole, including the treatment notes that were admitted, there's overwhelming evidence of longitudinal opinions that support a finding of disability. And as indicated in Estrella, Ferraro, and Stacy, those three cases look to treating sources rather than state agency sources as to mental health opinions. This case involves more than just whether a state agency consultant may have looked at this case, may have provided an opinion, but the record as a whole really pushes the other direction and there's no support for the ALJ's IRFC finding. Thank you, counsel. Thank you both. We'll reserve decision. I'm turning to the next case.